**FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
                                  :
INTERFAITH COMMUNITY              :
ORGANIZATION INC.,                :
GRACO COMMUNITY ORG., and         :
NATURAL RESOURCES DEFENSE         :          Civil Action No. 09-480 (JAG)
COUNCIL, INC.,                    :
                                  :                **OPINION**
        Plaintiffs,               :
                                  :
            v.                    :
                                  :
PPG INDUSTRIES, INC.,             :
                                  :
        Defendant.                :
_____:


**GREENAWAY, JR., U.S.C.J.**[1]

       This matter comes before this Court on a motion by defendant PPG Industries, Inc.

("Defendant" or "PPG") for summary judgment, pursuant to Federal Rule of Civil Procedure

56(c), or, alternatively, for abstention, or a stay, against plaintiffs Interfaith Community Org.,

Inc., Graco Community Org., and Natural Resources Defense Council, Inc. (collectively,

"Plaintiffs").  For the reasons set forth below, Defendant's motion shall be denied.

### I.  BACKGROUND

       Plaintiffs bring this suit under the Resource Conservation and Recovery Act ("RCRA"),

alleging that Defendant PPG contributed to chromium waste that may present an imminent and

_____

       [1]  Sitting by designation on the District Court.

substantial endangerment to health or the environment.

Beginning in the mid-1920s, a chrome production facility was operated at 880 Garfield Avenue, Jersey City, New Jersey ("Garfield Site").  (Def. PPG Indus., Inc.'s Statement of Material Facts Not in Dispute in Supp. of its Mot. for Summ. J. ("Def.'s 56.1") ¶ 1.)  From 1954 to 1963, this facility was utilized by PPG.  (Id. ¶¶ 2-3.)  The chrome production generated waste by-products on the site, one of which is a toxic chemical called hexavalent chromium.  (Pls.' Response to Def.'s Statement of Material Facts and Pls.' Statement of Additional Material Facts in Opp. to Def.'s Mot. for Summ. J. ("Pls.' 56.1") ¶ 35; Def. PPG Indus. Inc.'s Resp. to Pls.' Statement of Additional Material Facts ("Def.'s 56.1 Reply") ¶ 35.)

The contamination caused by chromium production sites, including the Garfield Site, became the subject of litigation in New Jersey state court when the New Jersey Department of Environmental Protection ("DEP") filed an action against PPG, and other chrome production facility operators, in 2005.[2]  (Def.'s 56.1 ¶¶ 5-6.)  The DEP sought remediation of the chromium waste, pursuant to the New Jersey Spill Compensation and Control Act (the "Spill Act"), N.J. Stat. Ann. 58:10-23.11 to 23.24.  (Certification of Joseph F. Lagrotteria, Esq. in Support of Mot. for Summ. J., Jul. 7, 2009 ("Lagrotteria Cert."), Ex. 2.)

On February 19, 2009, a proposed settlement was announced between the DEP and PPG, and a Consent Judgment was ultimately entered ("Consent Judgment").[3]  (Def.'s 56.1 ¶ 13; Pls.' 56.1 ¶ 51; Def.'s 56.1 Reply ¶ 51.)  The Garfield Site is included among the site remediations

[2]  The New Jersey Attorney General and the Administrator of the New Jersey Spill Compensation were also named plaintiffs.

[3]  In April of 2009, two of the Plaintiffs, Interfaith and the NRDC, filed comments recommending changes to the proposed Consent Judgment.  (Lagrotteria Cert., Exs. 7-8.)

required under the Consent Judgment.  (Def.'s 56.1 ¶ 14.)  The Consent Judgment provides, among other things, that PPG shall remediate, with a five-year goal for completion, the soils and sources of contamination at the relevant sites.  (Id. ¶¶ 17-18.)  The remediation is governed by the terms of the Consent Judgment and the "Applicable Remedial Provisions," meaning all applicable statutes, regulations, and laws, including the DEP Commissioner's Chromium Policy (as it now exists or may be adopted in the future).  (Id. ¶ 19.)  Currently, the most stringent standard for chromium levels, as expressed in the Chromium Policy, is 20 parts per million ("ppm").  (See Pls.' 56.1 ¶¶ 42, 55; Def.'s 56.1 Reply ¶ 55.)

The Consent Judgment also has a claim release provision, releasing the DEP's RCRA claims against PPG:

> Plaintiffs and Jersey City covenant not to sue and agree not to assert any claim against PPG or to take any further administrative, legal or equitable action available . . . regarding any discharge or release of Hazardous Substances . . . or any imminent and substantial endangerment posed by any discharge or release . . . under the Spill Act, CERCLA [Comprehensive Environmental Response, Compensation, and Liability Act], RCRA, common law, and any other local law or state or federal statute, regulation, or other authority.

(Def.'s 56.1 ¶ 15)

After the DEP had commenced its state court action, Plaintiffs filed a notice of intent to sue under the RCRA, in February of 2006.  (Id. ¶ 8.)  Three years later, on February 3, 2009, shortly before the Consent Judgment was announced,[4] Plaintiffs initiated this suit.  (Docket Entry No. 1.)

---

[4]  Defendant avers that a settlement was reached between the DEP and PPG on January 16, as evidenced by a letter the parties sent to the state court.  (Def.'s 56.1 Reply ¶ 51.)  The February 19, 2009 date refers to the date the settlement was announced on the New Jersey Attorney General's website.  (Id.)

3

The imminent and substantial endangerment citizen suit provision of the RCRA provides, in pertinent part,

> any person may commence a civil action on his own behalf . . . against any person, including the United States and any other governmental instrumentality or agency . . . who has contributed or is contributing to the past or present handling, storage, treatment, transportation or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B).

Plaintiffs seek to require Defendant to remediate the Garfield Site proportional to Defendant's historical share of waste production.  (Def.'s 56.1 ¶¶ 10-11; Pls.' 56.1 ¶¶ 10-11.)  In particular, Plaintiffs seek a full delineation of chromium hazards, permanent removal of all contaminated soils, remediation of all indoor contamination, and complete remediation of contaminated groundwater.  (See Docket Entry No. 1.)

Plaintiffs' allegations of an imminent and substantial danger is based, at least in part, on recently released information regarding hexavalent chromium.  Particularly relevant is the "finalized risk assessment," formulated by the DEP's Division of Science, Research & Technology, and sent to the DEP Commissioner in April of 2009.  (Pls.' 56.1 ¶ 52; Def.'s 56.1 Reply ¶ 52; Decl. of Richard Webster in Opposition to Def.'s Mot. for Summ. J., Jul. 30, 2009 ("Webster Decl."), Ex. 12.)  The risk assessment concludes that a human cancer slope factor corresponds to a soil remediation criterion for hexavalent chromium of 1 ppm.[5]  (Webster Decl.,

---

[5]  This risk assessment was based a National Toxicology Program ("NTP") study indicating that hexavalent chromium was carcinogenic when consumed by mice and rats in drinking water.  (Pls.' 56.1 ¶¶ 43, 45; Def.'s 56.1 Reply ¶¶ 43, 45.)  Plaintiffs claim that prior to this study, the carcinogenic effects of hexavalent chromium were known only with regard to exposure through inhalation.  (Pls.' 56.1 ¶ 43.)

Ex. 12.)

Based on this risk assessment, Plaintiffs filed a Petition for Rulemaking, requesting that the DEP promulgate a soil remediation standard for hexavalent chromium of 1 ppm. (Pls.' 56.1 ¶ 53.) Plaintiffs also petitioned for a remediation standard of 6 ppm, a standard Plaintiffs derived from the DEP risk assessment. (Id. ¶ 54.) The DEP denied both requests in June of 2009. (Id. ¶ 55.)

## II. LEGAL STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56(c), when the moving party demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and is material if, under the substantive law, it would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Justofin v. Metro. Life Ins. Co., 372 F.3d 517, 521 (3d Cir. 2004). This Court views "the facts in the light most favorable to the nonmoving party and draw[s] all inferences in that party's favor." Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007) (internal citation omitted). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

When the moving party has the burden of proof on an issue at trial, that party has "the burden of supporting their motions 'with credible evidence . . . that would entitle [them] to a directed verdict if not controverted at trial.'" In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003)

(quoting Celotex, 477 U.S. at 331).  "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists.  Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).  The non-movant cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  Anderson, 477 U.S. at 248; Siegel Transfer, Inc. v. Carrier Exp., Inc., 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990); see also Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").

## III.  ANALYSIS

Defendant asserts several grounds for bringing this suit to a halt, with either the grant of summary judgment, or, alternatively, the grant of abstention or a stay.

### A.  Mootness

In the first instance, Defendant contends that summary judgment should be granted because this action is moot as a result of the Consent Judgment.  This Court disagrees.

The mootness principle draws from "Article III of the Constitution, 'under which the exercise of judicial power depends upon the existence of a case or controversy.'"  DeFunis v. Odegaard, 416 U.S. 312, 316 (1974) (quoting Liner v. Jafco, Inc., 375 U.S. 301, 306 n.3 (1964)).

6

Simply put, "federal courts are without the power to decide questions that cannot affect the rights of litigants in the case before them." Id. (quoting North Carolina v. Rice, 404 U.S. 244, 246 (1971)). An action may become moot at any stage of litigation, when a court "cannot grant 'any effectual relief'" in favor of the plaintiff. Calderon v. Moore, 518 U.S. 149, 150 (1996) (quoting Mills v. Green, 159 U.S. 651, 653 (1895)). Even the availability of a "partial remedy," one that is not "fully satisfactory," avoids mootness. Id. (quoting Church of Scientology of Cal. v. United States, 506 U.S. 9, 13 (1992)).

PPG argues that because the Consent Judgment expressly resolved — through the claim release provision — all of the DEP's RCRA claims against PPG, Plaintiffs' claims are now moot. This overlooks the central issue in mootness: the availability of remedies.

Plaintiffs seek remedies outside of those provided in the Consent Judgment. Although the Consent Judgment addresses the same concern which underlies Plaintiffs' suit here — hazardous waste at the Garfield Site — it does not provide for all of the remedies that Plaintiffs seek, or that this Court may provide. Under the RCRA, this Court may order Defendant "to take such [] action as may be necessary" to resolve an imminent and substantial endangerment. 42 U.S.C. § 6972(a); see also United States v. Price, 688 F.2d 204, 213-14 (3d Cir. 1982) (concluding § 6972(a)(1)(B) contains "expansive language" conferring upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risk posed by toxic wastes). In other words, the Consent Judgment requires that PPG remediate chromium levels to DEP's current standard of 20 ppm, but this Court could potentially, for instance, order

remediation to a standard lower than 20 ppm.[6]

PPG relies heavily on Ohio Valley, in which a district court found that a citizen suit was rendered partially moot by the West Virginia Department of Environmental Protection's ("WVDEP") prosecution. Ohio Valley Environmental Coalition, Inc. v. Hobet Mining, LLC, No. 3:08-0088, 2008 WL 5377799 (S.D.W. Va. Dec. 18, 2008). In Ohio Valley, the plaintiffs brought suit against the defendant, Hobet Mining, for its violations of effluent permits under the Clean Water Act. Id. at *3. After plaintiffs filed the complaint, Hobet Mining entered into a mandatory consent decree with WVDEP to cease violations of its permits. Id. at *3-4. The court concluded that plaintiffs' action was moot because there was no "realistic prospect that violations alleged in [plaintiffs'] complaint will continue notwithstanding the consent decree." Id. at *7.

Ohio Valley is easily distinguished. In Ohio Valley, the defendant had already agreed to do what, substantively, the plaintiffs' sought to require it to do: cease permit violations.[7] The consent decree provided the full remedy that the plaintiffs sought.[8]

---

[6] While state standards may be "relevant and useful" information in the determination of whether an endangerment exists, the Third Circuit has clearly articulated that they are not controlling for purposes of liability in a RCRA imminent and substantial endangerment suit. Interfaith Community Org. v. Honeywell Int'l, Inc., 399 F.3d 248, 259-60, 261 n.6 (3d Cir. 2005).

[7] Defendant also cites to Pub. Interest Research Group of N.J., Inc. v. Hercules, Inc., which is similarly inapposite. Nos. 89-2291, 93-2381, 2003 WL 23519620 (D.N.J. Oct. 27, 2003). The Hercules court found mootness because it was "absolutely clear" that no more violations would occur, and that all effects of past violations had been "completely and irrevocably eradicated." Id. at *11.

[8] The Ohio Valley court found the case was moot even though plaintiffs sought a different schedule for injunctive relief than was provided in the defendant's consent decree because the court held the schedule in the consent decree was reasonable. Ohio Valley, 2008 WL 5377799 at *7-8.

This does not change the mootness analysis here. "Reasonableness" is not a relevant

8

Here, PPG has not agreed to provide all the remedies which Plaintiffs seek. Furthermore, in contrast with permitting cases, PPG's liability cannot be established simply by establishing "compliance" or "non-compliance" with preexisting state standards and regulations. Rather, the extent of Defendant's liability, if any, must be determined by a court. Therefore, PPG, unlike Hobet Mining, may be liable under the RCRA even if it complies with the state standards incorporated in the Consent Judgment. See Honeywell, 399 F.3d at 259-60 (holding a court may grant relief "as necessary" to abate endangerment, regardless of state standards).

There remains effectual relief that this Court may grant outside of the scope of relief provided for in the Consent Judgment.[9] This case is not moot.

**B. Res Judicata / Full Faith & Credit**

Defendant also argues that summary judgment should be granted because the Consent Judgment must be afforded Full Faith & Credit, and is, in essence, a res judicata bar to this suit. Plaintiffs counter that Full Faith and Credit is not required because New Jersey's res judicata rules would not preclude this action.

The issues of res judicata and Full Faith and Credit are related here, as both speak to the circumstances under which a lawsuit will be precluded as a result of a prior court's jurisdiction. "'[R]es judicata' refers broadly to the common-law doctrine barring relitigation of claims or

---

inquiry here. It is unlikely that claims seeking frivolous, or unreasonable, modifications to the Consent Judgment would survive. Such complaints would likely fail to meet the threshold inquiry of whether the conditions alleged pose an "imminent and substantial endangerment to health or the environment."

[9] Plaintiffs also argue that mootness is avoided because "there is no assurance that the Consent Judgment will be implemented as written." (Pls.' Br. at 14.) This speculative argument need not be addressed. This Court finds that mootness is not necessarily avoided, at least at this stage of litigation, even if Defendant complies with the Consent Judgment.

issues that have already been adjudicated." Velasquez v. Franz, 123 N.J. 498, 505 (1991). "The Full Faith and Credit Act mandates that 'judicial proceedings' of any State 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." Matsushita Electric Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996) (quoting 28 U.S.C. § 1738).

Federal courts use the Full Faith and Credit Act to apply the principles of res judicata (claim preclusion) and collateral estoppel (issue preclusion) to matters that have been previously decided in state courts. Kremer v. Chem. Constr. Corp., 456 U.S. 461, 476 n.6 (1982). The preclusive effect of a state court's decision on a federal court is governed by the preclusion rules of that state court. Marrese v. Am. Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985) (citing Kremer, 456 U.S. at 481-82). That is, the judgment will have a preclusive effect in the federal court if the judgment would have had a preclusive effect in the court that rendered the judgment. See id. at 381-82.

This Court must look to New Jersey's res judicata rules to determine whether Plaintiffs' RCRA suit is barred.

**1. New Jersey Res Judicata**

New Jersey's res judicata jurisprudence has three basic elements: (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one. Watkins v. Resorts Int'l Hotel and Casino, Inc., 124 N.J. 398, 410 (1991) (noting that New Jersey and federal res judicata have same elements).

This Court finds that New Jersey preclusion rules also include a jurisdictional requirement.  Under the prior jurisdictional competency rule, a judgment in one court will not preclude a claim over which it lacks jurisdiction, when that claim is later advanced in a second court.  See, e.g., Nanavati v. Burdette Tomlin Memorial Hosp., 857 F.2d 96, 112 (3d Cir. 1988).

In Nanavati, the Third Circuit closely examined New Jersey preclusion laws to determine whether a New Jersey state court judgment would preclude a subsequent action that was based in federal antitrust laws.  See generally Nanavati, 857 F.2d 96.  The court concluded that the New Jersey courts would follow the approach of the Restatement (Second) of Judgments and decline to preclude a claim over which it lacked jurisdiction.  Id. at 112-15.  Finding no case on point, the Court of Appeals concluded that New Jersey courts require prior jurisdictional competency after looking to:  (1) New Jersey courts' reliance on the Restatement (Second) of Judgments; (2) the language and application of New Jersey's entire controversy doctrine; and (3) the historic application of res judicata to claims prior to the merger of law and equity.  Id.

This Court agrees with, and must adhere to, the Third Circuit regarding its determination that New Jersey preclusion rules require prior jurisdictional competency.  See also PCC Constr. Inc. v. Star Ins. Co., 90 F. Supp. 2d 512 (D.N.J. 2000) (relying on Nanavati to find claims under Miller Act were not precluded because New Jersey required prior jurisdictional competency); Blatterfein v. Larken Associates, 323 N.J. Super. 167, 175 (N.J. Super. Ct. App. Div. 1999) (finding consumer fraud claims were not barred by entire controversy doctrine because plaintiff did not have right or opportunity to litigate them in arbitration proceeding).

## 2.  Prior Jurisdictional Competency

Plaintiffs and Defendant dispute whether the prior jurisdictional competency requirement

is satisfied here because they disagree as to whether federal courts have exclusive jurisdiction over RCRA actions.  If federal courts have exclusive jurisdiction, this Court need not reach the other elements of res judicata to determine whether Full Faith and Credit precludes this action. The Supreme Court established that when "state preclusion law includes this requirement of prior jurisdictional competency . . . a state judgment will *not* have claim preclusive effect on a cause of action within the exclusive jurisdiction of the federal courts."  Marrese, 470 U.S. at 382 (emphasis in original).[10]

This Court finds that the RCRA places exclusive jurisdiction in federal courts for suits brought under § 6972.  RCRA states: "Any action under paragraph (a)(1) of this subsection *shall be brought in a district court* for the district in which the alleged violation occurred or the alleged endangerment may occur."  42 U.S.C. § 6972(a) (emphasis added).

The overwhelming number of courts to consider the issue have likewise held that RCRA actions are exclusively federal.  See, e.g., Fletcher v. United States, 116 F.3d 1315, 1327 (10th Cir. 1997); Blue Legs v. U.S. Bureau of Indian Affairs, 867 F.2d 1094, 1098 (8th Cir. 1989); K-7 Enterprises, L.P. v. Jester, 562 F. Supp. 2d 819, 827 (E.D. Tex. 2007); Spillane v. Commonwealth Edison Co., 291 F. Supp. 2d 728, 732 (N.D. Ill. 2003); Prisco v. State of New York, No. 91-3990, 1992 WL 88165 *3 (S.D.N.Y. Apr. 22, 1992); Middlesex County Bd. of

---

[10]  Although the preclusive effect of a judgment is determined by the law of the judgment rendering court, the Supreme Court recognized that a state's preclusion law could never clearly establish the preclusive effect of a state court decision on an exclusively federal action.  See Marrese, 470 U.S. 380.  Because "a state court [would] not have occasion to address the specific question whether a state judgment has issue or claim preclusive effect in a later action that can be brought only in federal court," Id. at 381-82, "the question has been described as 'nearly metaphysical' in nature," Nanavati, 857 F.2d at 112 (citation omitted).  The Court found its answer by looking to states' prior jurisdictional competency rules.  See Marrese, 470 U.S. at 382.

Chosen Freeholders v. State of New Jersey, 645 F. Supp. 715, 719-20 (D.N.J. 1986).

Defendant argues that Congress did not intend federal courts to have exclusive jurisdiction because it did not say, as it did in the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), that "district courts shall have exclusive original jurisdiction over all controversies arising under this Act."  42 U.S.C. § 9613(b).

The only court to hold that concurrent jurisdiction exists under the RCRA is the Sixth Circuit.  See Davis v. Sun Oil, 148 F.3d 606, 612 (6th Cir. 1998).  The Davis court found that the language in the RCRA was ambiguous and did not overcome the presumption of concurrent jurisdiction between federal and state courts.  Id.

This Court declines to follow Davis, and agrees with the majority of courts that the RCRA confers exclusive jurisdiction on the federal courts.

### 3. Preclusive Effect of Consent Judgment

Since federal courts have exclusive jurisdiction over RCRA suits, New Jersey's prior jurisdictional competency rule indicates that the Consent Judgment does not preclude Plaintiffs' suit.  However, Defendant holds that the Supreme Court's decision in Matsushita stands for the notion that "exclusive jurisdiction would have no impact on the preclusive effect of the Consent Judgment."  (Def.'s Reply Br. at 6.)  This view of Matsushita misses the mark.  See generally Matsushita, 516 U.S. 367.

In Matsushita, the Supreme Court squarely confronted a question similar to that which is presented here: "whether a federal court may withhold full faith and credit from a state-court judgment approving a class-action settlement simply because the settlement releases claims within the exclusive jurisdiction of the federal courts."  Matsushita, 516 U.S. at 369.

13

In reversing the Ninth Circuit Court of Appeals, the <u>Matsushita</u> court held that courts could not "employ their own rules" to withhold Full Faith and Credit "simply" because the claims advanced were exclusively federal.  <u>Id.</u> at 373-74.  Rather, the Court held that, as previously established under <u>Marrese</u>, and <u>Kremer</u>, the laws of the state court would determine whether the claims were precluded.[11]  <u>Id.</u> at 369-75; <u>see also</u> 28 U.S.C. § 1738.

Proceeding to analyze relevant state law, the <u>Matsushita</u> court found that while Delaware originally had a prior jurisdictional competency requirement, its courts later developed an exception for class settlements with claim releases.  <u>Id.</u> at 376-77.  Thus, it found that the plaintiffs' Securities Exchange Act claims would be precluded because the settlement was res judicata under Delaware law.[12]  <u>Id.</u> at 378-80; <u>see also id.</u> at 385 ("[T]hese cases stand for the general proposition that even when exclusively federal claims are at stake, there is no 'universal right to litigate a federal claim in a federal district court.'  If [] plaintiffs wish to preserve absolutely their right to litigate exclusively federal claims in federal court, they should either opt out of the settlement class or object to the release of any exclusively federal claims.") (internal citation omitted).

<u>Matsushita</u> is applicable here, but Delaware law is not.  As discussed above, New Jersey

---

[11]  The Supreme Court identified that the preclusion analysis begins with the law of the rendering state, and, "[i]f state law indicates that the particular claim or issue would be barred from litigation in a court of that state, then the federal court must next decide whether, 'as an exception to § 1738,' it 'should refuse to give preclusive effect to [the] state court judgment.'" <u>Matsushita</u>, 516 U.S. at 375 (quoting <u>Marrese</u>, 470 U.S. at 383).  This Court need not reach the question of whether an exception to § 1738 is warranted here.

[12]  The court also found, under the second step of the preclusion analysis, that the Securities Exchange Act did not provide any explicit or implied exceptions to § 1738. <u>Matsushita</u>, 516 U.S. at 380-84.

preclusion rules require prior jurisdictional competency.  Therefore, under the analysis of Marrese and Matsushita, this Court concludes that the Consent Judgment, which released exclusively federal RCRA actions, does not preclude Plaintiffs' RCRA suit, under the Full Faith and Credit Act or common-law principles of res judicata.[13]

## C.  Abstention

Defendant posits, alternatively, that this Court should abstain from exercising jurisdiction in this case.  "Abstention is a judicially created doctrine under which a federal court will decline to exercise its jurisdiction so that a state court or agency will have the opportunity to decide the matters at issue.  The doctrine is rooted in concerns for the maintenance of the federal system and represents an extraordinary and narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them."  HiTech Trans, LLC v. New Jersey, 382 F.3d 295, 303 (3d Cir. 2004).

PPG asserts that abstention is appropriate under the Colorado River doctrine, the Burford doctrine, and the doctrine of primary jurisdiction.  See id. ("[A]bstention is justified only in the exceptional circumstances . . . . Those circumstances are loosely gathered under discrete concepts of abstention named after leading Supreme Court cases, viz., 'Pullman,' 'Burford,' 'Younger' and "Colorado River.'" (internal quotation marks and citations omitted).)  This Court finds

---

[13]  Though this Court has focused on the Full Faith and Credit Act, the same result is required under res judicata, as both are dependent on state preclusion laws.  (See Def.'s Br. 15-24 (arguing res judicata); Def.'s Reply Br. (arguing Full Faith and Credit).)  Defendant argues that res judicata applies because the basic elements — a valid and final judgment, privity, and common occurrence — are satisfied.  However, because New Jersey law also requires prior jurisdictional competency, res judicata does not preclude this suit.  See Nanavati, 857 F.2d at 115 (concluding that, under New Jersey res judicata and requirement of prior jurisdictional competency, state court judgment on defamation and discrimination did not preclude plaintiffs' subsequent action in federal court based on exclusively federal antitrust claims).

abstention is inapt here.

### 1. __Colorado River__

PPG argues that abstention is appropriate under <u>Colorado River</u> because of the ongoing enforcement of the Consent Judgment in state court.  <u>See</u>  <u>Colorado River Water Conservation District v. United States</u>, 424 U.S. 800 (1976).  This view is misguided.

The <u>Colorado River</u> doctrine, underpinned by considerations of "wise judicial administration . . . and comprehensive disposition of litigation," delineates limited circumstances in which federal courts may abstain because of an ongoing parallel state proceeding.  <u>Id.</u> at 817.

A two-part inquiry is required to warrant abstention:  (1) whether there is a parallel state proceeding that raises "substantially identical claims [and] nearly identical allegations and issues;" and (2) whether there are "extraordinary circumstances" meriting abstention. <u>Nationwide Mut. Fire Ins. v. George V.  Hamilton, Inc.</u>, 571 F.3d 299, 307-08 (3d Cir. 2009). Six factors have been established for determining whether extraordinary circumstances exist: "(1) [in an *in rem* case,] which court first assumed jurisdiction over [the] property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." <u>Id.</u> at 308 & n.10 (alterations in original) (quoting <u>Spring City Corp. v. Am. Bldgs. Co.</u>, 193 F.3d 165, 171 (3d Cir. 1999)).  On balance, these factors are "heavily weighted in favor of the exercise of jurisdiction." <u>Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.</u>, 460 U.S 1, 16 (1983).

Because federal courts have exclusive jurisdiction over RCRA actions, the first requirement of the <u>Colorado River</u> doctrine — that there be a parallel state proceeding — is not

satisfied.  The Third Circuit has noted precisely this, stating, "there can be no possible basis for abstaining [under Colorado River] if the state court to which the federal court defers lacks jurisdiction over the claim.  If the [plaintiffs'] claims are not subject to review in a state forum, there can be no 'parallel' state court litigation . . . ."  Univ. of Maryland at Baltimore v. Peat Marwick Main & Co., 923 F.2d 265, 276 n.16 (3d Cir. 1991).

Defendant's argument that the "continuing enforcement" of the Consent Judgment constitutes a parallel action is unavailing.  Indeed, in emphasizing the narrow application of Colorado River, the Third Circuit reiterated that "[t]he general rule regarding simultaneous litigation . . . is that both actions may proceed until one has come to judgment, at which point that judgment may create a res judicata . . . effect on the other action."  Spring City, 193 F.3d at 172 (quoting Univ. of Maryland, 923 F.2d at 275-76).

Nonetheless, even if the continuing enforcement of the Consent Judgment were a parallel proceeding to this federal action, the multi-factor test for "extraordinary circumstances" weighs against abstention.  Most significantly, the fifth and sixth factors lean heavily against abstention. The RCRA is a federal statute, thus, with regard to the fifth factor, this case is controlled by federal, not state, law.  "[T]he presence of federal-law issues must always be a major consideration weighing against surrender."  Moses H. Cone, 460 U.S. at 26.  The RCRA also confers exclusive jurisdiction upon federal courts.  Consequently, on the sixth factor, it is clear that, where a state court cannot hear plaintiffs' claims, the state court cannot adequately protect plaintiffs' interest.

Although the third factor, the desirability of avoiding piecemeal litigation, first sounds in favor of abstention, it is not.  This factor is not to be "so broad that it swallows up the century-old

principle . . . that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction."  Ryan v. Johnson, 115 F.3d 193, 198 (3d Cir. 1997) (quoted in Spring City, 193 F.3d at 172 (3d Cir. 1999)).

Piecemeal litigation was a paramount consideration in Colorado River because the Supreme Court found that the McCarran Amendment, 43 U.S.C. § 666, evinced a "clear federal policy" that the state court systems were the preferred means for adjudication of water rights in Colorado.  Colorado River, 424 U.S. at 819; accord Moses H. Cone, 460 U.S. at 19; Ryan, 115 F.3d at 196-97.  Maintaining the narrow application of Colorado River, the Third Circuit has made clear that "even though it is important to prevent 'piecemeal litigation,'" Colorado River is appropriate only when there is a "strongly articulated congressional policy" against such litigation.  Spring City, 193 F.3d at 172 (quoting Ryan, 115 F.3d at 198).

There is no indication of such a federal policy in the RCRA.  While the statute explicitly precludes citizen suits when an agency brings its own suit under RCRA or CERCLA, it makes no mention of preclusion when an agency brings a state action.  See Middlesex, 645 F. Supp. at 720 ("It is apparently contemplated by the legislative scheme that state proceedings could be going on relating to a waste disposal facility and a citizen suit relating to that same facility could proceed under RCRA in federal court.").  The inefficiencies that may be created by piecemeal litigation do not justify abstention here.

The fourth factor is the only factor clearly in favor of abstention, because the state court action began first.  However, this Court does not attribute significant weight to this bare fact. See Moses H. Cone, 460 U.S. at 16 ("The weight to be given any one factor may vary greatly from case to case.")

Lastly, the first and second factors are not especially relevant here.  PPG's argument that the state court has exercised jurisdiction over the Garfield site is incorrect because this is not an *in rem* proceeding.  See Morton College Bd. of Trustees of Illinois Comm. College District No. 527 v. Town of Cicero, 18 F. Supp. 2d 921, 929 (N.D. Ill. 1998) (finding first factor did not weigh in either direction because citizen suit under CERCLA "involves no state jurisdiction over property").  There is also no suggestion by either party that either federal forum is more or less convenient than the state forum.  See id. (finding convenience of forums in favor of neither party); see also Nationwide, 571 F.3d at 308 (finding first two factors irrelevant because parties conceded that case was not in rem proceeding and federal forum was convenient for both parties).

On balance, even if the Consent Judgment were considered a "parallel state proceeding," this Court finds no exceptional circumstances warranting Colorado River abstention.

### 2. **Burford**

PPG also argues that Burford provides an independent basis for abstention in this case. See Burford v. Sun Oil Co., 319 U.S. 315 (1943).  This Court disagrees.

Burford abstention is appropriate when "federal adjudication would disrupt an important and complex state regulatory scheme."  Lac D'Amiante Du Quebec, Ltd. v. Am. Home Assurance Co., 864 F.2d 1033, 1043 (3d Cir. 1988).  Where there is "timely and adequate state-court review available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies in two circumstances:

(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar; or (2) where the exercise of federal review of the question in a case and in

19

>   similar cases would be disruptive of state efforts to establish a coherent policy
>   with respect to a matter of substantial public concern.

New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 361 (1989) (internal

quotation marks omitted).

      In Riley, the Third Circuit reversed a district court's application of abstention by drawing

attention to the importance of the threshold requirement that a plaintiff have available "timely

and adequate state-court review" of his claims.  Riley v. Simmons, 45 F.3d 764, 773 (3d Cir.

1995).  In finding that abstention was inappropriate for claims under the Securities Exchange

Act, the court stated, "[w]here a state court lacks jurisdiction over a plaintiff's claim, Burford

abstention is clearly inappropriate because there can be no opportunity for 'timely and adequate

state court review' of a claim that a court has no power to decide."  Id.  The Court of Appeals

also noted that federal and common law claims were distinct, and not functionally equivalent, as

the district court had reasoned.  Id. at 773-74.

      As in Riley, state courts lack jurisdiction over the RCRA claims at issue here.

Additionally, this Court finds that the RCRA is distinct from the Spill Act, under which the DEP

brought its suit.  Specifically, the Spill Act has no imminent and substantial endangerment

provision.  Plaintiffs did not have available a functionally equivalent state cause of action.  Cf.

Dalicandro v. Legalgard, No. 99-3778, 2001 WL 1428359 *2 (E.D. Pa. 2001) (distinguishing

Riley and applying abstention because federal and state anti-fraud securities claims were

functionally equivalent).

      Furthermore, even if there existed timely review, the circumstances warranting Burford

abstention are not present here.  New Jersey's ability to create a coherent environmental policy

would not be disrupted by this Court's exercise of jurisdiction.[14]  See Morton College, 18 F.

Supp. 2d at 925-28 (rejecting Burford abstention for CERCLA claims and finding, inter alia, no

conflict with state's ability to develop coherent policy because although complex regulatory

scheme existed in environmental matters, case addressed only liability for condition of property

at issue).  Defendant does not articulate a cogent argument to the contrary.  The mere fact that a

state agency has taken some action on the waste at issue here does not make this Court's

subsequent involvement a disruptive intrusion into the state's capacity to create a coherent

policy.

      PPG relies on Space Age Fuels, Inc. v. Standard Oil Co., No. 95-1637, 1996 WL 160741

(D. Or. Feb. 29, 1996).[15]  In that case, the state environmental agency had issued six enforcement

actions and imposed civil penalties against Space Age for petroleum contamination on the

property it leased.  Id. at *1-2.  Space Age brought a RCRA suit, seeking an order to require

several defendants, who it alleged owned and operated the property at various times, to remedy

the contamination and reimburse Space Age for its remediation costs.  Id. at *2-4.  The court

abstained on the basis of Burford after finding that the court's involvement would interfere with

Oregon's creation of a coherent policy that "specifies who may be liable for remediation, and

authorizes the [agency] to require those liable to 'conduct any removal or remedial action or

_____

    [14]  This is the only plausible basis for Burford abstention in this case.  Defendant does not contend that the other possible use of Burford abstention, for circumstances involving "difficult questions of state law," applies here.

    [15]  PPG also relies on Davies v. Nat'l Cooperative Refinery Assoc., in which a district court relied on the doctrine of primary jurisdiction for abstention, and passingly approved of Burford abstention on the same grounds.  963 F. Supp. 990, 999 (D. Kan. 1997). Because the court's analysis in Davies proceeds under a multi-factor test traditionally used for primary jurisdiction, the case is discussed in further detail infra.

related action necessary to protect public health, safety, welfare or the environment.'" Id. at *3.

The state policy specifically codified the process by which persons could petition for

reimbursement, and further encompassed a party's statutory right to seek contribution from other

liable parties.  Id.

Space Age is inapposite.  Unlike Plaintiffs here, the court found that Space Age had

timely and adequate state court review available for its reimbursement claims.[16]

Also, Space Age asked the court to enjoin defendants against whom the state agency had

distinctly chosen not to pursue formal enforcement actions.  This case does not require the court

to question, challenge, or otherwise contradict the DEP's enforcement proceedings.  See Morton

College, 18 F. Supp. 2d at 928 (distinguishing Space Age and others on issue of Burford

abstention because those cases required courts to review state process of permit issuance, to

review decisions made by state agencies, or to interfere with state enforcement actions).

The other cases that Defendant cites also involve agency regulatory processes.  See, e.g.,

Sugarloaf Citizens v. Montgomery County, 1994 WL 447442, No. 93-2475 (4th Cir. 1994)

(permitting case); Jamison v. Longview Power, 493 F. Supp. 2d 786 (N.D.W. Va. 2007) (same).

Cases reviewing permitting decisions or agency enforcement actions are distinguishable for

purposes of abstention.  These cases are far more likely to "interfere" with a state's "coherent

policy" because permitting and agency enforcement actions touch upon "complex state regulatory

---

[16]   Additionally, it is clear that Space Age sought to use RCRA as an alternate to its
contribution and indemnification claims.  See id. *2 (asserting contribution and indemnification
claims).  In fact, it is not clear whether Space Age brought its action under the imminent and
substantial endangerment provision or another RCRA section.  See Space Age, 1996 WL 160741
*2 (noting claim brought pursuant to RCRA but not citing subsection or referencing imminent
and substantial endangerment).

schemes."  There is no regulatory process at issue here.  See, e.g., D.M.J. Associates v. Capasso,

228 F. Supp. 2d. 223, 230 (E.D.N.Y. 2002) (distinguishing defendant's abstention cases where

plaintiffs were essentially asking court to review permit decisions by administrative agency); see

also Morton College, 18 F. Supp. 2d at 928 (listing distinguishable cases).

Under Riley, and precedents applying Burford, there is no basis for declining jurisdiction

over this RCRA suit.

### 3.  Primary Jurisdiction

Next, Defendant argues that this Court should dismiss this case under the doctrine of

primary jurisdiction.  Like Colorado River and Burford, abstention is not justified on this basis.

The doctrine of primary jurisdiction is "concerned with promoting the proper

relationships between the courts and administrative agencies charged with particular regulatory

duties."  United States v. W. Pac. R.R. Co., 352 U.S. 59, 63-64 (1956).  The doctrine operates on

the principle that, "in cases raising issues of fact not within the conventional experience of judges

or cases requiring the exercise of administrative discretion, agencies created by Congress for

regulating the subject matter should not be passed over."  MCI Comm'ns Corp. v. Am.

Telephone & Telegraph Co., 496 F.2d 214, 220 (3d Cir. 1974) (quoting Far East Conference v.

United States, 342 U.S. 570, 574 (1952)).  Primary jurisdiction will "come[] into play whenever

enforcement of [a] claim requires the resolution of issues which, under a regulatory scheme, have

been placed within the special competence of an administrative body."  W. Pac. R.R. Co., 352

U.S. at 64.  At those times, "the judicial process is suspended pending referral of such issues to

the administrative body for its views."  Id.

Although "[n]o fixed formula exists" for the application of primary jurisdiction, many courts have considered four factors helpful in determining whether the "reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." Id.  As this Court has previously set forth, these factors are:

> (1) [w]hether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (2) whether the question at issue is particularly within the agency's discretion; (3) whether there exists a substantial danger of inconsistent rulings; and (4) whether a prior application to the agency has been made.

Global NAPS v. Bell Atlantic-New Jersey, 287 F. Supp. 2d 532, 549 (D.N.J. 2003).[17]

It would be counterintuitive, where Congress has created a private cause of action to respond to imminent and substantial endangerment, to require plaintiffs to defer, indefinitely, to a state agency once the agency becomes involved.  Many courts agree that abstention "would be an end run around RCRA" given that "Congress has *specified* the conditions under which the pendency of other proceedings bars suit under RCRA . . . ."  PMC, Inc. v. Sherwin-Williams Co., 151 F.3d 610, 619 (7th Cir. 1998) (emphasis in original); see also DMJ Assoc., 228 F. Supp. 2d at 229 (holding primary jurisdiction inapplicable because, by narrowly defining conditions that circumscribe a citizen suit, Congress clearly signaled the courts' duty to hear RCRA cases and the limited deference to agencies); Wilson v. Amoco Corp., 989 F. Supp. 1159 (D. Wyo. 1998) (applying four factors of primary jurisdiction and declining to defer to state and federal agency

---

[17]  Defendant relies on four factors established by a state court ruling.  (Def.'s Br. at 29.) The factors are worded slightly differently but appear to be equivalent to those identified by this Court.

because court had statutory duty to entertain action).

Defendant's contention that the remediation of hazardous substances and potential health impacts of chromium contamination is not "within the conventional experience of judges" is true only to this extent:  judges do not consistently and frequently engage in environmental matters, but, rather, have varied subject-matter experience.  Congress clearly contemplated that the environmental issues posed here are within the competency of the courts when it created a citizen suit provision.  See, e.g., Me. People's Alliance, 471 F.3d 277, 293-94 (1st Cir. 2001) ("[F]ederal courts have proven, over time, that they are equipped to adjudicate individual cases, regardless of the complexity involved.  Federal courts are often called upon to make evaluative judgments in highly technical areas."); Williams v. Alabama Dep't of Transp., 119 F. Supp. 2d 1249, 1257 (M.D. Ala. 2000) (rejecting defendant's argument that RCRA claims required special expertise beyond the court's grasp); see also Merry v. Westinghouse Elec. Corp., 697 F. Supp. 180, 183 (M.D. Pa. 1988) (stating statutory enforcement schemes do not pose questions beyond normal competence of courts).

The issues in this case are also not particularly within the DEP's discretion.[18]  The questions before this Court arise under the language of the RCRA, a statute which the DEP has no discretion to interpret.[19]  See, e.g., Heightened Independence and Progress v. Port Auth. of

---

[18]  The four factor test relied on by Defendant requires that a matter be "peculiarly within the agency's discretion, or require[] agency expertise."  (Def.'s Br. at 29.)  Defendant relies on the "agency expertise" clause in its argument.  (Id.)  This need not be separately addressed as it is essentially an inverse of the first factor, which asks whether a matter is within the conventional experiences of judges.

[19]  In fact, statutory interpretation is within the conventional experience of judges.  See Heightened Independence, 2008 WL 5427891 *5 (finding interpretation of ADA was within conventional experiences of judges).

New York and New Jersey, No. 07-2982, 2008 WL5427891 *5 (D.N.J. Dec. 30, 2008) (rejecting primary jurisdiction doctrine, noting Congress had not granted Federal Transit Administration any particular discretion to interpret the Americans with Disabilities Act).  The DEP's general discretion with regard to environmental matters in this state does not circumscribe citizen suits authorized by Congress.  See Honeywell, 399 F.3d at 267 (rejecting argument that DEP's presence precludes judicial remedy because of "preference for agency-directed cleanups," stating that Congress rejected notion that citizens must "exhaust or rely upon other resources or remedies before seeking relief" under RCRA).

The third factor, inconsistent rulings, is not a significant concern.  The fact that PPG may be subject to a more stringent remediation standard than it is under the Consent Judgment is not a reason to invoke the primary jurisdiction doctrine.  "Extra burden is not what [the primary jurisdiction] doctrine is meant to circumvent; additional obligation is not incompatible with nor does it undermine the agency-driven process."  Me. People's Alliance, No. 00-69-B-C, 2001 WL 1602046 *8 (D. Me. Dec. 14, 2001); cf. Davies v. Nat'l Cooperative Refinery Assoc., 963 F. Supp. 990, 998 (D. Kan. 1997) (finding explicit conflict between plaintiffs' request and settlement agreement between defendant and agency).[20]

While the last factor — whether prior application has been made to the agency — likely weighs in favor of Defendant, this factor alone is insufficient to invoke primary jurisdiction.

---

[20]  In Davies, the plaintiffs sought to enjoin the defendant from pumping an aquifer, as that pumping was causing hazardous waste to migrate into the aquifer on plaintiffs' property. Davies, 963 F. Supp. at 998.  The state agency, however, found that pumping the aquifer was a necessary remedial measure for waste removal and explicitly required, in its settlement agreement, that the defendant continue pumping.  Id.  There is no such direct conflict present here.

Defendant's argument relies primarily on <u>Davies</u>.  The <u>Davies</u> court applied primary jurisdiction, and <u>Burford</u> abstention, by deciding, in part, that matters of hazardous waste remediation were within the special expertise of the state agency.  <u>Davies</u>, 963 F. Supp. at 997. The court also held that injunctive relief weighed in favor of abstention because it required more scientific or technical knowledge than other remedies.  <u>Id.</u> at 998.   The <u>Davies</u> court also faced a direct conflict between the remedy sought by the plaintiffs and the remedy the agency found necessary for remediation.  <u>Id.</u>; <u>see</u> <u>also</u> <u>supra</u> note 20.

This Court declines to follow <u>Davies</u>' application of primary jurisdiction abstention.  <u>See</u> <u>Davies</u>, 963 F. Supp. 997-99 (noting split among courts on applicability of abstention in RCRA cases).

### 4.  Collateral Attack[21]

Defendant also argues that this Court should preclude Plaintiffs' action as an impermissible collateral attack on the New Jersey state court case, the Consent Judgment, and the DEP.  Plaintiffs' suit is not an improper collateral attack.

The collateral attack doctrine, like res judicata and Full Faith and Credit, promotes finality in litigation by upholding judgments of other courts.  <u>See</u>, <u>e.g.</u>, <u>Daniels v. U.S.</u>, 532 U.S. 374, 378 (2001) ("Two considerations supported our constitutional conclusion in <u>Custis</u> [prohibiting collateral attacks on prior convictions]: ease of administration and the interest in

---

[21]   The collateral attack doctrine has little precedent in civil cases as a distinct ground for abstention.  Defendant identifies the collateral attack doctrine as an individual argument in its moving brief, but later argues that "this Court should abstain from entertaining Plaintiffs' collateral attack under the primary jurisdiction, <u>Colorado River</u>, and <u>Burford</u> abstention doctrines."  (Def.'s Reply Br. at 14.)  This section addresses collateral attack to the extent that Defendant intended to employ collateral attack as a separate ground for abstention.

promoting the finality of judgments").

PPG maintains that Plaintiffs' improper intent is evidenced by the three year gap between Plaintiffs' notice to file suit and its commencement of this action, which occurred when the Consent Judgment was in its final stages.  According to PPG, Plaintiffs should have intervened when they thought the DEP was inadequately representing them rather than "[sitting] on the sidelines" while the Consent Judgment was negotiated.

Defendant relies on the language in two Third Circuit cases that suggest that an "unjustified or unreasonable failure to intervene can serve to bar a later collateral attack."  See Soc'y Hill Civic Ass'n v. Harris, 632 F.2d 1045, 1052 (3d Cir. 1980); Nat'l Wildlife Fed'n v. Gorsuch, 744 F.2d 963, 971-72 (3d Cir. 1984) (relying, in part, on Soc'y Hill, 632 F.2d 1045). The principle of obligatory intervention, as expressed in Soc'y Hill, has been explicitly rejected by Martin v. Wilks, 490 U.S. 755, 762-65 (1989).[22]

Moreover, Defendant's argument fails for three independent reasons.  First, Plaintiffs could not have brought their exclusively federal RCRA suit in state court.  Barring their suit for their failure to intervene would undermine the goal of fairness that is served by the jurisdictional competency requirement in preclusion rules.  Second, under the plain language of the RCRA, there is no requirement that Plaintiffs intervene in a separate state proceeding.  See 42 U.S.C. § 6972.  Third, the RCRA has no express limits on the time for the filing of a complaint, other

---

[22]   Martin v. Wilks was superseded by an amendment to the Civil Rights Act, with regard specifically to challenging consent decrees in employment-related claims.  See 42 U.S.C. § 2000e-2(n).  It appears the general principle underlying Wilks remains — that the "linchpin of the 'impermissible collateral attack' doctrine — the attribution of preclusive effect to a failure to intervene — is therefore quite inconsistent with [Federal Rule of Civil Procedure] 19 and Rule 24." Wilks, 490 U.S. 755, 762-65 (1989); see, e.g., United States v. City of New York, 198 F.3d 360, 366 (2d Cir. 1999) (noting Wilks was superceded only for employment-related claims).

than the requirement that it be, at minimum, 90 days after a notice of intent to sue.[23]  See § 6972(b)(2)(A).  Defendant's collateral attack argument, like the other grounds for abstention, merely seeks an "end run" around the RCRA citizen suit.

Defendant also reasons that Plaintiffs' improper purpose is evidenced by the substance of Plaintiffs' claims, which attack the DEP's past actions, the DEP standards for remediation, and the results of the Consent Judgment.[24]  PPG attempts to analogize this case to three cases that were dismissed as collateral attacks by the plaintiffs.  Each of those cases applies Burford abstention in the context of agency permitting decisions, and each emanates from within the Fourth Circuit.  None is applicable here.

In Palumbo, the Court of Appeals for the Fourth Circuit found that the RCRA suit brought by a city and state, as plaintiffs, was, "at bottom," a collateral attack on the federal EPA's permitting decisions regarding an incinerator in the neighboring state of Ohio.  Palumbo v. Waste Techs. Indus., 989 F.2d 156, 158-59 (4th Cir. 1993).  The court remarked that the suit was specifically forbidden by the RCRA, which provided that judicial review was not available where a direct appeal could be made to review RCRA permitting decisions.  Id. at 159.  The plaintiffs, in fact, had initiated a permit appeal process, but did not pursue it to its end.  Id. at 158.[25]

---

[23]  Plaintiffs complied with the 90 day notice requirement.

[24]  Defendant additionally points to the fact that two of the Plaintiffs had filed proposed changes to the Consent Judgment.

[25]  The Palumbo plaintiffs had appealed the EPA's permit modification to the Environmental Appeals Board, were denied, and then failed to appeal that declination to an appropriate circuit court, as required by the RCRA.  Palumbo, 989 F.2d at 158; see also 42 U.S.C. § 6976(b).

Defendant also relies on <u>Sugarloaf Citizens Ass'n v. Montgomery County</u>, No. 93-2475, 1994 WL 447442 (4th Cir. Aug. 17, 1994).  There, the plaintiff had "spearheaded" efforts, including a month-long hearing before an administrative law judge ("ALJ"), to insure strict compliance with permits governing waste facilities.  <u>Id.</u> at *1.  The plaintiff was entrenched in the appellate process for a review of the ALJ's decision when it filed a citizen suit under the RCRA on the same subject matter.  <u>Id.</u> at 1-2.  The district court held, and the Fourth Circuit affirmed, by relying on <u>Burford</u> and <u>Palumbo</u>, that <u>Burford</u> abstention was appropriate because the plaintiff was "merely attempting a collateral attack of MDE's permitting decisions."  <u>Id.</u> *2, 4.

Lastly, Defendant finds support in <u>Jamison</u>, where the plaintiffs challenged a permitting decision made by the West Virginia Division of Air Quality.  <u>Jamison</u>, 493 F. Supp. 2d at 787.  First, the plaintiffs filed a complaint to challenge the validity of the permit.  <u>Id.</u>  Then, after voluntarily dismissing the complaint, they filed a citizen suit under the Clean Air Act.  <u>Id.</u>  at 788.  The court, once again relying on <u>Burford</u> and <u>Palumbo</u>, as well as <u>Sugarloaf</u>, found that the suit was a collateral attack on a permitting decision and abstained from exercising jurisdiction. <u>Id.</u> at 788-91.

<u>Palumbo</u>, <u>Sugarloaf</u>, and <u>Jamison</u> are inapposite.  Unlike the plaintiffs in those cases, Plaintiffs here are not circumventing a prescribed appeals process for permits that have been issued through a regulatory process.  Defendant is correct, in some sense, that Plaintiffs are "attacking" the DEP's actions and standards.  Yet, this the very nature of an imminent and

---

The court also found <u>Burford</u> abstention was warranted on the plaintiffs' challenge of the state of Ohio's permitting decisions because the plaintiffs were awaiting a decision on the issue from the Ohio EPA's Board of Review.  <u>Palumbo</u>, 989 F.2d at 159-60.

substantial endangerment citizen suit:  it allows citizens to seek judicial remedies where,

allegedly, an agency has failed to protect people or the environment from danger.  To abstain on

the basis of collateral attack here would defeat Plaintiffs' statutory right to a citizen suit.

Many of Defendant's collateral attack arguments are policy based.[26]  PPG argues, "[t]he

RCRA citizen suit provision is 'not intended to enable citizens to commandeer the federal

enforcement machinery. . . . A citizen's role is secondary to the 'preeminent role' of the

government in environmental enforcement." (Def.'s Br. at 32-33.)  Defendant contends that once

an agency acts to enforce environmental laws, a citizen suit is barred, especially because

government agency enforcement is preferred over citizen suits.  (Id. at 33.)  Defendant urges that

the court is not the proper avenue for Plaintiffs to express dissatisfaction with, or challenge, the

Consent Judgment.  (Id. 34, 39.)

"While defendant's concern for duplicitous litigation is certainly well founded and

understandable, it appears that Congress took no steps to bar a RCRA citizen suit for any other

reason than that referred to [in the statute]." Middlesex, 645 F. Supp. at 720 (denying

defendant's motion to dismiss in case where same issues were central to state litigation).[27]

Although the subject matter of the Consent Judgment and the remediation standards chosen by

---

[26]  Under the umbrella of "collateral attack," Defendant also passingly declares that the
Consent Judgment is a statutory bar to Plaintiffs' RCRA citizen suit.  In light of the Full Faith
and Credit Act and New Jersey's prior jurisdictional competency requirement, the Consent
Judgment cannot constitute a statutory bar.  The statute precludes citizen suits essentially only
when the agency brings a RCRA or CERCLA suit.  See 42 U.S.C. § 6972(b)(2)(C).

[27]  Defendant attempts to distinguish Middlesex because it involved pending litigation in
state courts, whereas this case involves a judgment.  However, to the extent this difference is
important, it has already been addressed — for example, by addressing the applicability of Full
Faith and Credit and res judicata.

the DEP are, indirectly, at issue here, there is no legitimate basis for abstention.  As the

Middlesex court acknowledged, the RCRA suit may exist in spite of other actions having been

taken to resolve the same matter.  See also Honeywell, 399 F.3d at 267 (rejecting defendant's

argument that Congress had a "preference for agency-directed cleanups," and noting that courts

could consider availability of alternative remedies but need not require exhaustion or deference

to other resources).

**D.  Stay**

Finally, Defendant presents a cursory argument that a stay of this action, until PPG fulfills

its obligations under the Consent Judgment, is necessary to prevent two conflicting orders from

two different courts.  (Def.'s Br. at 40.)

This Court declines to stay Plaintiffs' suit.  The indiscernible risk of two conflicting

orders does not warrant a stay for five or more years, until the completion of the Consent

Judgment provisions.  Mere speculation that orders will conflict will not overcome Plaintiffs'

right to adjudicate their federal claims.  Cf. Davies, 963 F. Supp. at 997-99 (abstaining where

plaintiffs sought a remedy directly contradictory to state agency and defendant's agreed upon

method for remedying contamination).

Defendant is unpersuasive in its attempt to have this Court refrain from acting until it can

be seen whether the case is rendered moot by the eventual performance of the Consent Judgment.

Such a lengthy stay would defeat the purpose of an environmental provision seeking to remediate

*imminent* and substantial endangerment and run contrary to this Court's unflagging obligation to

exercise its jurisdiction.  See DMJ Assoc., 228 F. Supp. 2d at 231-32 (declining to stay, noting

that it would be a "sleight of hand" if, after refusing to abstain out of deference to Congressional

intent, a court granted the same effective relief in the form of a case management tool).

## IV.  CONCLUSION

For the reasons stated above, Defendant's motion seeking summary judgment, an abstention, or a stay, is denied.


 S/Joseph A. Greenaway, Jr.
JOSEPH A. GREENAWAY, JR., U.S.C.J.
(Sitting by designation on the District Court)

Dated: March 26, 2010

33